**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| ALOFT MEDIA, LLC, | § | |
| | § | Civil Action No. 6:09-CV-304 |
| Plaintiff, | § | JURY TRIAL DEMANDED |
| | § | |
| v. | § | |
| | § | |
| ORACLE CORPORATION, ET AL., | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S
OPENING BRIEF REGARDING CLAIM CONSTRUCTION**

**Table of Contents**

I.  INTRODUCTION ............................................................................1

II.  BRIEF SUMMARY OF THE PATENTED TECHNOLOGY...........................................1

III.  APPLICABLE LEGAL STANDARD ............................................................3

IV.  ARGUMENTS................................................................................4

   A.  The Claim Terms "Decision Logic" and "Logic Related to Decision Making" are Indefinite................................................................4

      1.  "Decision Logic" in '898 Patent, Claim 14, is Indefinite.............................................................................5

      2.  "Logic Related to Decision Making" in '910 Patent, Claim 110, is Indefinite...............................................................7

      3.  "Decision Making" in '898 Patent, Claim 46, and '910 Patent, Claim 110, is Indefinite. ...........................................7

      4.  "Capable of Performing Logic Related to Decision Making" in '910 Patent, Claim 110, is Indefinite.......................................9

      5.  "Capable of Performing Decision Logic" in '898 Patent, Claim 14, is Indefinite...........................................................9

   B.  "Potential Feasible Hybrid Theme" is Indefinite....................................9

   C.  "Decision Hierarchy Display" is "A Display That Shows an Order of Precedence for Policies, Decisions, and Tactics." ................................10

   D.  "Universal Module" is "A Module That is Capable of Interfacing with Different Applications." ............................................12

   E.  "Collaborative Decision Platform" is Indefinite....................................13

   F.  "Computer Code for Processing" is Indefinite. .....................................14

   G.  "Value" and "Sources of Value" are Indefinite. ...................................16

      1.  The Value Terms are Subjective.................................................17

      2.  The Asserted Patents do not Disclose an Objective Standard ...................................................................19

i

3.     The Value Terms are Used Inconsistently Throughout the Asserted Patents ...............................................................20

V.     CONCLUSION.............................................................................................................21

ii

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Atmel Corp. v. Info. Storage Devices, Inc.*,
198 F.3d 1374 (Fed. Cir. 1999)............................................................................4

*Blackboard, Inc. v. Desire2Learn, Inc.*,
574 F.3d 1371 (Fed. Cir. 2009).............................................................................4

*Comark Commc'ns, Inc. v. Harris Corp.*,
156 F.3d 1182 (Fed. Cir. 1998)...........................................................................11

*Datamize, LLC v. Plumtree Software, Inc.*,
417 F.3d 1342 (Fed. Cir. 2005)...............................................................17, 18, 19

*Decisioning.com, Inc. v. Federated Dep't Stores Inc.*,
527 F.3d 1300 (Fed. Cir. 2008)...........................................................................13

*Gardner v. Toyota Motor Corp.*,
No. C 08-0632, 2009 WL 4110305 (W.D. Wash. Nov. 19, 2009) ........................20

*Halliburton Energy Servs., Inc., v. M-I LLC*,
514 F.3d 1244 (Fed. Cir. 2008)......................................................................19, 20

*Harrah's Entm't, Inc. v. Station Casinos, Inc.*,
321 F. Supp. 2d 1173 (D. Nev. 2004).................................................5, 18, 19, 20

*Mas-Hamilton Group v. LaGard, Inc.*,
156 F.3d 1206 (Fed. Cir. 1998)............................................................................4

*Micro Chem. Inc. v. Great Plains Chem. Co.*,
194 F.3d 1250 (Fed. Cir. 1999)............................................................................4

*Personalized Media Commc'ns v. Int'l Trade Comm'n*,
161 F.3d 696 (Fed. Cir. 1998).............................................................................4

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) ...........................................................3

*Pickholtz v. Rainbow Techs., Inc.*,
284 F.3d 1365 (Fed. Cir. 2002)...........................................................................13

*Realtime Data, LLC v. Packeteer, Inc.*,
652 F. Supp. 2d 791 (E.D. Tex. 2009) .................................................................21

*SuperGuide Corp. v. DirectTV Enters., Inc.*,
    358 F.3d 870 (Fed. Cir. 2004)..................................................................................3

*Synqor, Inc. v. Artesyn Techs., Inc.*,
    No. 2:07-CV-497, 2010 WL 2991037 (E.D. Tex. July 26, 2010) .............................................7

*WMS Gaming, Inc. v. Int'l Game Tech.*,
    184 F.3d 1339 (Fed. Cir. 1999)..................................................................................15, 16

## STATUTES

35 U.S.C. § 112 ¶ 6 ..................................................................................4, 14, 15, 16

## OTHER AUTHORITIES

American Heritage Dictionary (3d ed. 1994)[hereinafter "Ex. C"] ........................................17, 19

Dyer Dec., ¶ 13 ..................................................................................9

Dyer Dec., ¶ 15 ..................................................................................5, 6

Dyer Dec., ¶ 16 ..................................................................................6

Dyer Dec., ¶ 17 ..................................................................................6

Dyer Dec., ¶ 18 ..................................................................................16

Dyer Dec., ¶¶ 11-12 ..................................................................................9

iv

## I.   INTRODUCTION

Twelve claim terms are at issue, and those twelve terms can be considered in seven groups: (1) the five "decision logic" terms, (2) potential feasible hybrid theme, (3) decision hierarchy display, (4) universal module, (5) collaborative decision platform, (6) computer code for processing, and (7) the two "value" terms.  The terms in the first two and the final three of those seven groups are insolubly ambiguous and not amenable to construction.  The remaining two terms, decision hierarchy display and universal module, are defined in the patent specification.

Aloft seeks constructions for these terms that are designed to cover the entire world of decision analysis – even though that world long predates the Aloft patents.  Indeed, the Aloft patents discuss decision analysis methods dating back to the time of Benjamin Franklin.  The two Aloft patents contain 432 claims, of which 48 are asserted in this case.  The meaning of certain key terms in those claims is impossible to determine, and certain of those key terms are found either directly or indirectly in each of the 48 asserted claims.  For example, the phrase "potential feasible hybrid theme" occurs in each asserted claim – and yet is not defined or discussed anywhere in the patent.  As such, the public has no basis for determining the boundaries of the claims.  For those terms not amenable to construction, the Defendants show by clear and convincing evidence both below and in their Motion for Summary Judgment that the terms are indefinite.  For the terms that are amenable to construction, the Defendants' proposed constructions are based solely on the intrinsic evidence.

## II.  BRIEF SUMMARY OF THE PATENTED TECHNOLOGY

The patents-at-issue are directed to a computer software program for decision-making. More specifically, the title of both patents is "Decision-Making System, Method and Computer

1

Program Product," and the field of the invention is "a computer-based platform which supports a decision making process."  ('898 Patent [hereinafter "Ex. A"], 1:17-19.)  The purported inventive element of the claimed inventions, however, is not a decision-making process itself. As stated in the specification's Background of the Invention, decision-making processes were known as far back as the 18th century when Benjamin Franklin coined a process using decision alternatives, and many more solutions surfaced thereafter, including the Dialogue Decision Process ("DDP").  (Ex. A, '898 Patent, 1: 22-56.)  The DDP is a decision making process that was known in the prior art and includes the steps of framing, alternatives, analysis, and connection.  The patents attempt to claim the subjective idea of decision making in a computer implementation of the DDP.

In trying to narrow the scope of the claims to overcome a Section 101 rejection, the patentee limited the claims to certain field of use applications, which is not proper under the current law, and Defendants' co-pending motion for summary judgment for non-patentable subject matter addresses this issue under the current *In re Bilski* regime.  For example, Claim 14 of the '898 Patent recites that the claimed executed application is at least one of "a real estate-related application, a medical-related application, a corporate-related application, a product supply-related application, a service supply-related application, or a financial-related application." (Ex. A, '898 Patent, 14:60-65.)  The specification, however, does not provide any computer code or algorithms for these field of use applications, or any other applications. Neither does the specification provide any description of the actual software programs that process the information related to the claimed applications.

2

## III. APPLICABLE LEGAL STANDARD

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*) (quotation omitted). The words of a claim "are generally given their ordinary and customary meaning." *Id.* (quotation omitted). The ordinary meaning is the meaning the term would have to a person of skill in the art in question at the time of the patent application. *Id.* at 1313.

Frequently, the context in which a term is used in the asserted claim can be highly instructive in determining its ordinary meaning. *Id.* at 1314. In some cases, the ordinary meaning of a claim term "may be readily apparent even to lay judges," and claim construction in these cases "involves little more than the application of the widely accepted meaning of commonly understood words." *Id.*

The specification of the patent is also "highly relevant to the claim construction analysis" because it usually "is the single best guide to the meaning of a disputed term." *Id.* at 1315. (quotation omitted). The specification may also "reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess," or it may similarly show that the patentee excluded specific subject matter from the scope of the claim. *Id.* at 1316. However, the specification "is not a substitute for, nor can it be used to rewrite, the chosen claim language." *SuperGuide Corp. v. DirectTV Enters., Inc.*, 358 F.3d 870, 875 (Fed. Cir. 2004).

Courts may also consider extrinsic evidence, which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Phillips*, 415 F.3d at 1317 (quotation omitted). In particular, dictionaries and similar sources "are often useful to assist in understanding the commonly understood meaning of words." *Id.* at 1322.

3

Whether a particular claim is a means plus function term under 35 U.S.C. § 112 ¶ 6 is a matter of law for the Court. *Personalized Media Commc'ns v. Int'l Trade Comm'n*, 161 F.3d 696, 702 (Fed. Cir. 1998). When a claim element lacks the term "means," the presumption of a term not being a means plus function term collapses when the claim language nonetheless relies on functional language rather than structure or materials to describe performance of the claimed function. *Micro Chem. Inc. v. Great Plains Chem. Co.*, 194 F.3d 1250, 1257 (Fed. Cir. 1999). If the recited element is not shown to have a generally understood structural meaning in the art, and if the language used is purely functional, the fact that the word "means" is not employed does not avoid the narrowing effect of § 112 ¶ 6. *Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1213-14 (Fed. Cir. 1998). "If the specification does not contain an adequate disclosure of the structure that corresponds to the claimed function, the patentee will have 'failed to particularly point out and distinctly claim the invention as required by the second paragraph of section 112,' which renders the claim invalid for indefiniteness." *Blackboard, Inc. v. Desire2Learn, Inc.*, 574 F.3d 1371, 1382 (Fed. Cir. 2009), (quoting *In re Donaldson Co.*, 16 F.3d 1189, 1195 (Fed. Cir. 1994) (*en banc*)). It is important to determine whether one of skill in the art would understand the specification itself to disclose the structure, not simply whether that person would be capable of implementing the structure. *Atmel Corp. v. Info. Storage Devices, Inc.*, 198 F.3d 1374, 1382 (Fed. Cir. 1999).

## IV.   ARGUMENTS

### A.  The Claim Terms "Decision Logic" and "Logic Related to Decision Making" are Indefinite.

There are five decision terms at issue in this case: "decision logic"; "logic related to decision making"; "decision making"; "capable of performing decision logic"; and "capable of performing logic related to decision making," collectively referred to below as the "decision

4

terms."  To simplify the issues before the Court, the Defendants will focus on two of the terms: "decision logic" and "logic related to decision making," but each of the decision terms is indefinite, and they should rise or fall together.  Defendants co-pending Motion for Summary Judgment on Indefiniteness outlines Defendants' position on these terms and that motion is incorporated by reference into this brief.  (Defendants' Motion for Summary Judgment of Invalidity of the Asserted Claims of United States Patent Nos. 7,499,898 and 7,593,910 for Indefiniteness (No. 163)(filed Dec. 7, 2010)[hereinafter "Def's Mot."].)

**1.  "Decision Logic" in '898 Patent, Claim 14, is Indefinite.**

| Plaintiff's Construction | Defendants' Construction |
|---|---|
| Operations to execute a decision process. | Term is indefinite. |

In an attempt to understand the decision terms, a person of ordinary skill in the art would be limited to one of two options: either view the terms broadly, or view the terms narrowly. (Declaration of Dr. James S. Dyer in support of Defendants' Motion for Summary Judgment [hereinafter "Ex. D"], ¶ 15.)  If viewed broadly, the terms are unbounded and could include virtually any type of decision making process.  (Ex. D, Dyer Dec., ¶ 15.)  Yet, Aloft is not entitled to claim every method for making a decision.   To be entitled to exclude others from using a certain methodology of making a decision, the patentee must sufficiently describe the method so that one of skill in the art could determine the scope of the claims.  *Harrah's Entm't, Inc. v. Station Casinos, Inc.*, 321 F. Supp. 2d 1173, 1179-80 (D. Nev. 2004).

Aloft's proposed construction adopts the broad view of these terms.  By using the phrase "**a** decision process" in its construction, Aloft is attempting to cover every possible method of making a decision.  Under Aloft's proposed construction one of ordinary skill in the art would not know the scope of the claims because the claims would essentially be directed at every

5

decision making methodology imaginable, which could extend from the DDP method discussed in the patent to undisclosed methods such as a computerized coin flip.  A person of ordinary skill in the art would have no basis for determining any bounds for the decision terms.  (Ex. D, Dyer Dec., ¶ 15.)  For example, Aloft's opening brief describes multiple decision methodologies, but would extend its claim to cover "other similar processes" – while providing no means for the pubic to determine what is or not is not "similar."  *See* Plt's Opening Br. Regarding Claim Construction (No. 162)(filed Nov. 23, 2010)(hereinafter "Plt's Markman Br."), 2-3 (stating that the claimed invention fulfilled the need for "software capable of supporting the above decision-making processes," referring to "the DDP and other similar processes").

Once Plaintiff's overly broad construction is rejected, no narrowing construction remains that would render the decision terms definite to one of skill in the art.  Under a narrow view, the term's only possible point of reference in the patents is the Dialogue Decision Process ("DDP"), which is discussed throughout the patent specification and the figures.  (Ex. D, Dyer Dec., ¶ 16.)  This narrow view is supported by the motivation for the invention given in the patent: "a need for a computer-implemented method which may be utilized for implementing DDP in different environments in a universal manner."  (Ex. A, '898 Patent, 2:1-3; Ex. D, Dyer Dec., ¶ 16.)  A narrowing construction that limits the decision terms to DDP, however, would still leave the claims indefinite to one of ordinary skill in the art.  (Ex. D, Dyer Dec., ¶ 16.)

The DDP process has four steps – each of which is subjective, with the final step (the Connection step) being wholly subjective.  (Ex. D, Dyer Dec., ¶ 17.)  Many aspects of the DDP process depend on the unrestrained subjective opinions of the person or persons practicing the process.  (Ex. D, Dyer Dec., ¶ 17.)  Thus, even under a narrow view, the decision terms are indefinite because, to be definite, the intrinsic evidence must disclose a formula or standard with

6

sufficient "explanatory limitation" to tell one of skill in the art *how* to determine if the desired result – that is, the claimed result – has been reached. *Input/Output, Inc.*, No. 5:06-CV-236, 2008 WL 5427982, at *26 (E.D. Tex. Apr. 28, 2008); *Synqor, Inc. v. Artesyn Techs., Inc.*, No. 2:07-CV-497, 2010 WL 2991037, at *29 (E.D. Tex. July 26, 2010).   Each step of the DDP methodology is premised on purely subjective opinions of the users or authors practicing the claimed invention, rendering the precise scope of the claimed invention indefinite, and Defendants refer the Court to their summary judgment motion for further details on why the DDP cannot be the basis for a definite claim.

### 2. "Logic Related to Decision Making" in '910 Patent, Claim 110, is Indefinite.

| Plaintiff's Construction | Defendants' Construction |
|---|---|
| No construction necessary. | Term is indefinite. |

"Logic related to decision making" is the '910 Patent's analog to "decision logic" in the '898 Patent, and the term is indefinite for the same reasons discussed in Defendant's Motion for Summary Judgment and described above for "decision logic."

Aloft does not offer a construction for "logic related to decision making," (Plt's Markman Br., No. 162, 7), but does offer a construction for "decision making," which is discussed below.

### 3. "Decision Making" in '898 Patent, Claim 46, and '910 Patent, Claim 110, is Indefinite.

| Plaintiff's Construction | Defendants' Construction |
|---|---|
| Evaluating alternatives in the course of a decision process. | Term is indefinite. |

"Decision making" is indefinite for the same reasons discussed in Defendant's Motion for Summary Judgment and described above in the discussion of "decision logic."

7

Further, Aloft's proposed construction would provide no guidance to the jury because it uses the term "decision process" as part of the definition, which is used in the specification as a synonym for "decision making process."  For example, the patent states:

> One of the first recorded **decision making processes** was proposed in the 18th century when Benjamin Franklin suggested a process by which one of two decision alternatives could be selected through listing advantages of the alternatives side by side and canceling out advantages or groups of advantages judged to be equal on both sides. Subsequently many decision processes have been proposed and are in use today. These include popular ones, such as Kepner-Tregoe where criteria for making the decision are listed and the alternatives are assessed (on a scale from 1 to 10) as to how they perform on each of the criteria. The criteria are also weighted on a similar scale and the best alternative is judged to be the highest dot product of the criteria weights and the respective assessments for the alternative against the criteria. Various modifications to this basic process in order to take into account complexities of having multiple decision makers, refining the assessment process through pair-wise comparison, etc., have resulted in many other such decision processes such as Value Management, Analytic Hierarchy Process, and others. There are also several methodologies (such as decision analyses using decision trees and probability methods) aimed at assisting a decision-maker think through the options one has in making a decision and potential outcomes of each option. However many of these **decision processes** are in fact not processes, but only individual tools to compare pre-defined alternatives within a pre-specified problem frame.

(Ex. A, '898 Patent 1:23-49).  Essentially, Aloft is propounding a confusing construction that uses the disputed claim term as part of its own definition.  Aloft's inability to proffer a clarifying construction further evidences the inability of one of ordinary skill in the art to understand this term and therefore it is indefinite.

Aloft's proposed construction for "decision making" finds no support in the intrinsic evidence.  Aloft's proclamation that "[i]n view of this disclosure, then, the term 'decision making' refers to 'evaluating alternatives in the course of a decision process,'" is puzzling in that

the phrase "evaluating alternatives" is found nowhere in the patent.  Neither Aloft's proposed

construction, nor the intrinsic evidence, describe any criteria for "evaluating alternatives."

### 4.   "Capable of Performing Logic Related to Decision Making" in '910 Patent, Claim 110, is Indefinite.

| Plaintiff's Construction | Defendants' Construction |
|---|---|
| No construction necessary. | Term is indefinite. |

The term "capable of performing logic related to decision making" embodies the term

"logic related to decision making" and is indefinite for the reasons described above for that term.

### 5.   "Capable of Performing Decision Logic" in '898 Patent, Claim 14, is Indefinite.

| Plaintiff's Construction | Defendants' Construction |
|---|---|
| No construction necessary. | Term is indefinite. |

The term "capable of performing decision logic" embodies the term "decision logic" and

is indefinite for the reasons described above for that term.

### B.  "Potential Feasible Hybrid Theme" is Indefinite.

| Plaintiff's Construction | Defendants' Construction |
|---|---|
| A strategy resulting from a combination of parameters from two or more alternative strategies | Term is indefinite. |

The term "potential feasible hybrid theme" is indefinite for the reasons discussed in the

Defendants' Motion for Summary Judgment.  In particular, the word "theme" is not defined

anywhere in the patents, and the term "hybrid" is wholly subjective.  (Ex. D, Dyer Dec., ¶¶ 11-

12.)  The adjectives "potential" and "feasible" do nothing but add to the confusion.  (Ex. D, Dyer

Dec., ¶ 13.)

9

Aloft argues that "the specification refers to a potential feasible hybrid theme as a hybrid strategy," but the citation Aloft provides says no such thing.  In fact, nowhere in Aloft's discussion of "theme" does Aloft point to a single place in the patent where that term is used apart from in the claims.  Instead, Aloft argues without any basis that a theme is a strategy.  A theme, however, cannot be the same as a strategy because the claims use both terms, and neither the specification nor the claims indicate that the two terms are synonyms.  In fact, the claims indicate just the opposite. Claim 54 of the '898 patent, for example, specifies that a "**hybrid theme includes a hybrid strategy**."  The inescapable conclusion from that claim is that, whatever a "theme" is, a "theme" cannot possibly be just another name for a "strategy" as Aloft now argues.  Aloft's proposed construction must be rejected.  Further, no construction of this term is possible for the reasons discussed in the Defendants' Motion for Summary Judgment.

### C.  "Decision Hierarchy Display" is "A Display That Shows an Order of Precedence for Policies, Decisions, and Tactics."

| Plaintiff's Construction | Defendants' Construction |
| --- | --- |
| A display that indicates the precedence of parameters in a decision process. | A display that shows an order of precedence for policies, decisions, and tactics. |

Each asserted independent claim recites a "decision hierarchy display."  The Aloft patents provide six examples of such a display, and each example includes policies, decisions, and tactics.  (Exs. A and B, Figs. 3, 3a (excerpt reproduced below), 4a, 7, 8a, 19.)  Indeed, those three items—policies, decisions, and tactics—are why it is called a "hierarchy" display – the policies are always shown at the top of the triangle, with the decisions in the middle, and the tactics at the base.

10



Aloft's proposed construction essentially replaces policies, decisions, and tactics with the vague term "parameters" – a term that appears nowhere in the patents or in the claims.  Thus, it is not surprising that Aloft offers no basis for the insertion of the term "parameters" into its construction.  (Plt's Markman Br., No. 162, 9.)  Aloft presumably believes that polices, decisions, and tactics are examples of parameters, yet they are never referred to as such anywhere in the patents or the claims.

Aloft's determined flight from the repeated examples in its own patent is based on claim differentiation between Claim 110 and Claim 169 of the '910 patent, which states that "the decision hierarchy display includes at least one policies [*sic*], decisions, or tactics."  First, as with the remainder of the patent, Claim 169 says nothing about "parameters."  At most, Claim 169 could support a construction of "policies, decisions, <u>or</u> tactics" as opposed to the "policies, decisions, <u>and</u> tactics" shown in all of the examples.  Second, the doctrine of claim differentiation is not "a hard and fast rule" but rather "create[s] a presumption that each claim in a patent has a different scope."  *Comark Commc'ns, Inc. v. Harris Corp.,* 156 F.3d 1182, 1187 (Fed. Cir. 1998).  In this case, that presumption is overcome.  Every example of a "decision hierarchy display" shown in the patent is a hierarchy of *three* items – policies on top, decisions in the middle, and tactics on the bottom – and it is difficult to envision a hierarchy of *one* item, Aloft's construction and Claim 169 notwithstanding.

11

### D. "Universal Module" is "A Module That is Capable of Interfacing with Different Applications."

| Plaintiff's Construction | Defendants' Construction |
|---|---|
| A reusable software component for carrying out certain functionality. | A module that is capable of interfacing with different applications. |

Certain of the asserted claims require a "universal module."  Aloft's proposed construction for the term is "a reusable software component for carrying out certain functionality."  The final phrase in that construction adds nothing because every "software component" is designed "for carrying out certain functionality." Thus, Aloft's proposed construction can be reduced to "a reusable software component."  That is, Aloft is, in essence, just asking the Court to replace "universal" with "reusable."  For support, Aloft argues that "the specification describes 'universal modules' as reusable software components in a software component integration architecture," and Aloft points for support to Column 4, Lines 63 and following in the '898 patent.  (Plt's Markman Br., No. 162, 12.)  Yet that discussion beginning in Column 4 says nothing at all about "universal modules."  Instead, for a discussion of "universal modules," one must turn not to Column 4 but to Column 3, where the patent describes a "universal module" as "capable of interfacing with different applications," (Ex. A, '898 Patent, 3:53-55) which is the construction proposed by the Defendants.

Aloft's proposed construction essentially removes the word "universal" from the claims in which it appears.  After all, it is difficult to envision a software component that is not "reusable," and it is equally difficult to understand how "universal" and "reusable" are synonyms. The Defendants' proposed construction, by contrast, assigns to "universal" the same meaning assigned to it in the patents – capable of interfacing with different applications.  Under

12

Aloft's proposed construction, a "universal" module could be repeatedly reused over and over with the same application, which is hardly "universal."

Once again, Aloft plucks a dependent claim from its stable of 432 claims in the two asserted patents and argues that the Defendants' proposed construction violates the canon of claim differentiation.   But the Federal Circuit has recognized that "'no canon of claim construction is absolute in its application,' *Renishaw PLC v. Marposs Societa' per Azioni,* 158 F.3d 1243, 1248 (Fed. Cir. 1998), and that surplusage may exist in some claims, *see Pickholtz v. Rainbow Techs., Inc.,* 284 F.3d 1365, 1373 (Fed. Cir. 2002)."   *Decisioning.com, Inc. v. Federated Dep't Stores Inc.,* 527 F.3d 1300, 1312 n.6 (Fed. Cir. 2008).   The phrase "capable of interfacing with different applications" in Claim 15 is just such an example – it simply repeats the definition of "universal" found in the specification, perhaps to better explain the remainder of Claim 15, which specifies that the "applications" must be "adapted for applying the universal modules differently."   In any event, neither Claim 15 nor anything else in the patents provides support for the notion that "universal" means "reusable."

### E.  "Collaborative Decision Platform" is Indefinite.

| Plaintiff's Construction | Defendants' Construction |
|---|---|
| Computing environment that facilitates decision processes for different purposes by retrieving and receiving information from different sources and processing the information. | Term is indefinite. |

Aloft describes the "collaborative decision platform" as "the backbone of the claimed computer program product" (Plt's Markman Br., No. 162, 13), and yet that all important "backbone" is apparently an *optional* backbone in that it is not a requirement in any of the asserted independent claims, but rather makes an appearance only in certain of the asserted

13

dependent claims.   This inconsistency in Aloft's own discussion of "collaborative decision platform" drives home the Defendants' point – the term "collaborative decision platform" is hopelessly ambiguous and no consistent construction of the term is possible.

### F.   "Computer Code for Processing" is Indefinite.

| Plaintiff's Construction | Defendants' Construction |
|---|---|
| No construction necessary. | Term is indefinite. |

The term "computer code for processing" appears in every asserted independent claim of the '898 and '910 Patents, and is the subject of Defendants' co-pending Motion for Summary Judgment on Indefiniteness.  For the sake of brevity, and to preserve valuable judicial resources, Defendants incorporate by reference and renew the arguments asserted in that motion, as if fully set forth herein.  (Def's Mot., No. 163, 17-26.)

The term "computer code for processing" is subject to § 112, ¶ 6 because it claims a computer-implemented means for performing the function of "processing."  Plaintiff's proposed construction does not dispute the functional nature of the term.  Rather, Plaintiff relies solely on the argument that the claim term "computer code" alone constitutes sufficient structure to avoid the ambit of § 112, ¶ 6.  (Plt's Markman Br., No. 162, 16-17.)

In relying on *Aloft Media, LLC v. Adobe Sys., Inc.*, Plaintiff misstates the Court's holding and omits the language and reasoning critical to the decision.  570 F. Supp. 2d 887, 897 (E.D. Tex. 2008).  Contrary to Plaintiff's assertion, the *Adobe* Court did not contravene precedent and hold that "computer code, in itself, connotes sufficient structure to one skilled in the art."  (Plt's Markman Br., No. 162, 16.)  Rather, the Court looked beyond the recitation of "computer code, in itself," to find that the claims themselves otherwise disclosed a specific description of the

14

"computer code's operation," adequately conveying the structure for performing the "specific function" to one of skill in the art. *Aloft*, F. Supp. 2d at 897-98.

The Court's analysis in *Adobe* is illustrative of Plaintiff's flawed logic. The claim at issue read as follows: "computer code for working in conjunction with a network browser wherein a user is allowed to pre-select one of the identifiers," where the language following "working" placed limitations on the computer code's operations. *Id.* at 897. Accordingly, because the claim language itself was found to contain specific, descriptive limitations on the method for performing functional operations, the Court held that sufficient structure was disclosed such that § 112, ¶ 6 did not apply. *Id.* at 898. In essence, the claims' description of the specific operations carried out by the computer code effectively disclosed a sufficiently specific algorithm as a means for performing the claimed function, thereby fulfilling the Federal Circuit's requirement that software patents disclose a specific algorithm. *See WMS Gaming, Inc. v. Int'l Game Tech.,* 184 F.3d 1339, 1348 (Fed. Cir. 1999). Thus, to escape § 112, ¶ 6, the mere recitation of "computer code" alone is not sufficient, but rather the term must be "coupled with a description of the computer code's operation" sufficient to convey structure to one of skill in the art. *Aloft Media,* 570 F. Supp. 2d at 898.

The *Adobe* decision and the Court's reasoning illustrate why, in the context of the asserted claims, "computer code for processing" fails to disclose sufficient structure. Unlike the claim language in *Adobe*, the asserted claims at issue here do not provide any meaningful description of the "processing" operations carried out by the "computer code." The disclosed "processing" function, even with the addition of "first information and second information," falls far short of disclosing a "specific operation" that would convey structure to one of skill in the art. *See id.* at 897-98. The claim language does not tell one of skill in the art how information is

15

selected for processing, nor does it provide any guidance or specifics regarding the operations conducted during processing.  (Ex. D, Dyer Dec., ¶ 18.)   Although the term "processing" conveys a general meaning to one of skill in the art, the functionality of the term as understood is nevertheless indefinite absent a description of the specific operations to be performed.  *See Aloft*, 570 F. Supp. 2d at 897.  This requirement is especially important given the breadth of contexts and industries to which the claimed inventions purportedly apply.  Accordingly, "computer code for processing," in the context of the claims, does not disclose sufficient structure to avoid the ambit of § 112, ¶ 6.

The term "computer code for processing" is indefinite under § 112, ¶ 6, because the patents' specification fails to disclose a specific algorithm for "processing," as required by the Federal Circuit.  *See WMS Gaming*, 184 F.3d at 1348.  Although Plaintiff argues that "computer code for processing" carries a plain and ordinary meaning that is readily understandable by the jury (Plt's Markman Br., No. 162, 14), Plaintiff does not in any way attempt to explain or describe the operations performed during "processing."   Plaintiff does not explain how the jury—let alone one of skill in the art—could ever know whether any specific computer operations infringe or fail to infringe the asserted claims.  The patentee's inadequate disclosure constitutes an impermissible attempt to claim every method of "processing" information in the computer software industry.  For these reasons, as well as those discussed in Defendants' motion for summary judgment, Defendants request that the Court hold the term "computer code for processing" invalid as indefinite.

### G.  "Value" and "Sources of Value" are Indefinite.

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| No construction necessary. | Term is indefinite. |

The terms "value" and "sources of value" (collectively, "the value terms") appear in certain dependent claims of the asserted patents.  Specifically, "value" appears in dependent Claims 42, 43, and 44 of the '898 Patent and Claims 139, 140, 141, 176, and 177 of the '910 Patent.  The term "sources of value" appears in all of the listed claims except for Claims 139 and 176 of the '910 Patent.  In some claims, "value" appears within "sources of value," and in others "value" appears independently of "sources of value."  (Ex. A, '898 Patent, Claim 42.)  The value terms are all indefinite because they are directed at a user's subjective judgment of importance or merit.  The inconsistent use of the value terms throughout the asserted patents further illustrates that the value terms are insolubly ambiguous.  The following Claims of the asserted patents are representative of the value terms:

| Claim 42 of the '898 Patent | Claim 140 of the '910 Patent |
| --- | --- |
| The computer program product as recited in claim 41, where the decision sensitivity display compares a **value** of a first strategy with alternatives and identifies **sources of value**. | The computer program product as recited in claim 135, wherein the decision sensitivity display identifies **sources of value**. |

### 1.  The Value Terms are Subjective.

As used in the asserted patents, the value terms are indefinite because they inherently depend on the subjective opinion of each individual program user.  *Datamize, LLC v. Plumtree Software, Inc.,* 417 F.3d 1342, 1350 (Fed. Cir. 2005).  The patents do not disclose any objective standard for determining what constitutes a "value," nor the corresponding "sources of value," preventing one of ordinary skill in the art from determining the scope of the claim.  *Id.* at 1350-51.  Thus, all of the terms containing the value terms are indefinite under § 112, ¶ 2.

The plain meaning of value is a principle, standard, or quality, considered worthwhile or desirable.  (The American Heritage Dictionary (3d ed. 1994)[hereinafter "Ex. C"], 887 at definitions 3, 4.)  Thus, value is determined solely by the individual "considering" the principle,

17

standard, or quality in question.  Plaintiffs do not dispute this plain meaning, and do not propose a construction otherwise limiting the scope of the meaning.  (Plt's Markman Br., No. 162, 18.) As used in the asserted patents, the value terms are solely dependent on the subjective opinions of the software users, rendering them indefinite.  *Datamize*, 417 F.3d at 1350.  The specification expressly describes values as subjective, referring to "***the values that are important to the decision makers***."  (Ex. A, '898 Patent, 10:48-49 (emphasis added).)  Indeed, Plaintiff adopts this subjective use of "value" by quoting this very language in its claim construction brief.  (Plt's Markman Br., No. 162, 5.)  The patent drawings further illustrate the subjectivity of the value terms, depicting "***user insight into the sources of value***" as input.  (Ex. A, '898 Patent, Fig. 6a.) As such, "one skilled in the art is left to guess" whether something is of value to a certain user. *See Harrah's*, 321 F. Supp. 2d at 1179-80 (D. Nev. 2004).

Determining "value" is further complicated given the broad applicability of the claims to many industries; whether something is of "value" is thus dependent not only on the user's opinion, but also on the industry-specific context in which "value" is being determined.  *Id.* at 1180 (lack of objective formula, coupled with a variety of embodiments or applications weigh in favor of indefiniteness).  The decision making software's constant subordination to the subjective opinions of the users prevents the patent from serving the public notice function contemplated by § 112.  Because the scope of each claim is subject to each user's subjective opinions, the claims are indefinite.

Just as "value" is subjective, so too are "sources of value."  The specification describes the subjective nature of "sources of value," stating, "The first connection module 606 also ***receives as input user insight 129 regarding how to combine sources of value into a new more valuable hybrid strategy***."  (Ex. A, '898 Patent at 12:66-13:2.)  The plain meaning of "sources"

18

is a thing or place from which something comes or arises.  (Ex. C, 780 at def. 1.)   That "component" has a plain meaning that a jury would understand does not negate that "sources of value" is indefinite.  If one of skill in the art cannot determine whether something is of value in the first place, it follows that he would have no way to determine the thing that gave rise to the value.  Accordingly, the value terms are indefinite because their scope cannot be ascertained from the patents.

### 2.    The Asserted Patents do not Disclose an Objective Standard.

In addition to being subjective, the asserted patents fail to disclose any objective standard for determining the scope of the value terms, rendering the asserted claims invalid as indefinite. Other than indicating that the value terms are dependent on the opinion of the user in the industry-specific context, the specification fails to supply an algorithm or formula for determining what is a "value" and what is not, and thus for determining the "sources of value." The failure to teach one of skill in the art *how* to determine the desired result renders the terms indefinite.  *See Harrah's*, 321 F. Supp. 2d at 1179 (patent's failure to state *how* one would compute a "theoretical win profile" was invalid as indefinite).

Although the specification gives an example of "profit" as value (Ex. A, '898 Patent, 13:67-14:1), this example alone does not set forth an objective standard with sufficient "explanatory limitation" for determining the value terms in all the contexts and industries to which the claimed inventions purportedly apply.  *Datamize*, 417 F.3d at 1352 (examples of different embodiments or applications are insufficient to render claim definite if they fail to disclose an objective standard).  The asserted patents do not explain whether, to be a "value" within the scope of the claims, profit must be relatively high or low, or within a certain quantitative or qualitative range.  *Accord Halliburton Energy Servs., Inc., v. M-I LLC*, 514 F.3d 1244, 1255-56 (Fed. Cir. 2008).  The single example of profit in one specific context is

19

insufficient to enable one of ordinary skill in the art to determine what would be infringing, and what would not in the "range of possibilities envisioned by the users" (Ex. A, '898 Patent, 11:31-32).  *See id.* at 1255 (term indefinite where scope was highly context-dependent and patent did not provide quantitative metric or formula for calculating).  Even given the profit example, the asserted patents still do not explain how to identify the corresponding "sources of value" or how to compute this new information when making a decision.  *Accord Harrah's*, 321 F. Supp. 2d at 1178-79.  Moreover, the mere disclosure of a "profit" does not take away from the fact that the user's subjective opinion of "value" ultimately controls the determination, rendering the claims invalid as indefinite.

### 3. The Value Terms are Used Inconsistently Throughout the Asserted Patents.

In addition to being subjective, the term "value" is used inconsistently throughout the asserted patents.  In particular, there is a discord in the patent between "value" as a subjective consideration of worth and "value" as an objective number resulting from a mathematical computation.  On one hand, the patent describes "value" as a quality or characteristic that is "important to the decision makers," and does not limit a "value" to one single quality.  (Ex. A, '898 Patent, 10:49.)  On the other hand, the patent describes "value" as a single, discreet number that is somehow calculated, in stating that "[t]he collaborative decision platform uses the spreadsheet from the decision application to *calculate the value of the hybrid* 812, as shown on Fig. 8i." (Ex. A, '898 Patent, 14:11-13.)

These competing meanings of "value" in the patent render the claim insolubly ambiguous.  *See Gardner v. Toyota Motor Corp.*, No. C 08-0632, 2009 WL 4110305, at *6 (W.D. Wash. Nov. 19, 2009).  The patent's inconsistency prevents one of skill in the art from determining the scope of the claimed invention. Because the public does not have notice of

20

whether something is of "value," neither does it have notice of the sources from which it arose – that is, the "sources of value."   This inconsistent use of "value" further weighs in favor of invalidity for indefiniteness.  *See Realtime Data, LLC v. Packeteer, Inc.*, 652 F. Supp. 2d 791, 799 (E.D. Tex. 2009) (holding that the use of a term inconsistently throughout the patent was clear and convincing evidence that term was "insolubly ambiguous").   Accordingly, the value terms are not amenable to construction and are indefinite.

## V.  CONCLUSION

Defendants' proposed constructions are supported by the intrinsic and extrinsic evidence. Therefore, Defendants respectfully request that the Court adopt their proposed constructions.

21

Dated: December 7, 2010

Respectfully submitted,

**McKOOL SMITH, P.C.**

By: /s/ Phillip Aurentz_____

Theodore Stevenson, III
   Texas State Bar No. 19196650
   tstevenson@mckoolsmith.com
Aimee Perilloux Fagan
   Texas State Bar No. 24010299
   afagan@mckoolsmith.com
Phillip Aurentz
   Texas State Bar No. 24059404
   paurentz@mckoolsmith.com
McKool Smith, P.C.
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

**ATTORNEYS FOR DEFENDANTS HALLIBURTON COMPANY AND HALLIBURTON ENERGY SERVICES, INC.**

22

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic

service are being served with a true and correct copy of this document via the Court's CM/ECF

system per Local Rule C.V.-5(a)(3) on the 7 day of December, 2010.

/s/ Phillip Aurentz_____
Phillip Aurentz